*E-filing*

ORIGINAL
FILED

AUG 3 0 2006

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

1 | BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP
Alan R. Plutzik (Bar No. 077785)

2 | L. Timothy Fisher (Bar No. 191626)
Kathryn A. Schofield (Bar No. 202939)

3 | 2125 Oak Grove Road, Suite 120
Walnut Creek, California 94598

4 | Telephone: (925) 945-0200
Facsimile: (925) 945-8792

5

6 | SCHIFFRIN & BARROWAY LLP
Eric L. Zagar

7 | Sandra G. Smith
280 King of Prussia Road

8 | Radnor, PA 19087
Telephone: (610) 667-7706

9 | Facsimile: (610) 667-7056

10 | Attorneys for Plaintiff

11 | UNITED STATES DISTRICT COURT

12 | NORTHERN DISTRICT OF CALIFORNIA

13 | SAN JOSE DIVISION

14 | IRWIN BERKOWITZ, Derivatively on Behalf      Case No. **C06-05353**
of Nominal Defendant AFFYMETRIX, INC.,

15 | **SHAREHOLDER DERIVATIVE**
                                  Plaintiff,      **COMPLAINT**
16

17 |        v.

18 | STEPHEN P.A. FODOR, SUSAN E. SIEGEL,
BARBARA A. CAULFIELD, GREGORY T.

19 | SCHIFFMAN, RONALD D. VERDOORN,
EDWARD M. HURWITZ, VERNON A.

20 | NORVIEL, KENNETH J. NUSSBACHER,
RICHARD PRAVA, JOHN A. YOUNG,

21 | DAVID B. SINGER, VERNON R. LOUCKS,
JR., JOHN D. DIEKMAN and PAUL BERG,

22 |                                  Defendants,

23 |        and,                                    **JURY TRIAL DEMANDED**

24 | AFFYMETRIX, INC.

25 |                          Nominal Defendant.

26

27

28

SHAREHOLDER DERIVATIVE COMPLAINT
CASE NO.
48514

1  Plaintiff, by his attorneys, submits this Derivative Complaint (the "Complaint") against the

2  defendants named herein.

3  ## NATURE AND SUMMARY OF THE ACTION

4  1.  This is a shareholder's derivative action brought for the benefit of nominal

5  defendant Affymetrix, Inc. ("Affymetrix" or the "Company") against certain members of its Board

6  of Directors (the "Board") and certain of its executive officers seeking to remedy defendants'

7  breaches of fiduciary duties, unjust enrichment, statutory violations, and other violations of law.

8  2.  In gross breach of their fiduciary duties as officers and/or directors of Affymetrix,

9  the Individual Defendants (as defined herein) colluded with one another to:

10  (a)  improperly backdate dozens of grants of Affymetrix stock options to Affymetrix

11  Chief Executive Officer Stephen P. A. Fodor and several other Affymetrix

12  executives, in violation of the Company's shareholder-approved stock option plans;

13  (b)  improperly record and account for the backdated stock options, in violation of

14  Generally Accepted Accounting Principles;

15  (c)  improperly take tax deductions based on the backdated stock options, in violation of

16  Section 162(m) of the Internal Revenue Code;

17  (d)  produce and disseminate to Affymetrix shareholders and the market false financial

18  statements and other SEC filings that improperly recorded and accounted for the

19  backdated option grants and concealed the improper backdating of stock options.

20  3.  As a result of the Individual Defendants' egregious misconduct, Affymetrix has

21  sustained millions of dollars in damages, and Fodor and the other recipients of the backdated stock

22  options have garnered millions of dollars in unlawful profits.

23  ## JURISDICTION AND VENUE

24  4.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this

25  Complaint states a federal question.  This Court has supplemental jurisdiction over the state law

26  claims asserted herein pursuant to 28 U.S.C. § 1367(a).  This action is not a collusive one to confer

27  jurisdiction on a court of the United States which it would not otherwise have.

28

1    5.    Venue is proper in this district because a substantial portion of the transactions and

2    wrongs complained of herein, including the defendants' primary participation in the wrongful acts

3    detailed herein, occurred in this district.  One or more of the defendants either resides in or

4    maintains executive offices in this district, and defendants have received substantial compensation

5    in this district by engaging in numerous activities and conducting business here, which had an

6    effect in this district.

7                                              **PARTIES**

8    6.    Plaintiff Irwin Berkowitz is, and was at all relevant times, a shareholder of nominal

9    defendant Affymetrix.

10   7.    Nominal defendant Affymetrix is a Delaware corporation with its principal

11   executive offices located at 3420 Central Expressway, Santa Clara, California 95051.  According to

12   its public filings, Affymetrix is engaged in the development, manufacture, sale and service of

13   consumables and systems for genetic analysis in the life sciences and clinical healthcare.

14   8.    Defendant Stephen P. A. Fodor ("Fodor") has served as the Company's Chairman

15   since 1999, as Chief Executive Officer since 1997, and as a director since 1993.

16   9.    Defendant Susan E. Siegel ("Siegel") has served as the Company's President

17   Emeritus since April 2006.  Siegel also served as the Company's President from August 1999 to

18   April 2006, as a director from 2001 to 2006, and as Senior Vice President, Marketing and Sales

19   from April 1998 to August 1999.

20   10.   Defendant Barbara A. Caulfield ("Caulfield") has served as the Company's

21   Executive Vice President and General Counsel since July 2001.

22   11.   Defendant Gregory T. Schiffman ("Schiffman") has served as the Company's

23   Executive Vice President and Chief Financial Officer since February 2005.  Schiffman also served

24   as Senior Vice President and Chief Financial Officer from October 2002 to February 2005, as Vice

25   President and Chief Financial Officer from August 2001 to October 2002, and as Vice President,

26   Finance from March 2001 to August 2001.

27   12.   Defendant Ronald D. Verdoorn ("Verdoorn") served as the Company's Senior

28   Transition Team Member, Global Operations, from March 2002 to March 2003.  Verdoorn also

SHAREHOLDER DERIVATIVE COMPLAINT                                                              2
48514

served as the Company's Executive Vice President, Global Operations from November 2000 to March 2002, and as the Company's Executive Vice President, Global Manufacturing from January 1999 to November 2000.

13.     Defendant Edward M. Hurwitz ("Hurwitz") served as the Company's Senior Advisor from January 2002 to July 2002.  Hurwitz also served as Senior Vice President, Corporate Strategy and New Ventures from August 2001 to October 2001, as Senior Vice President and Chief Financial Officer from October 2000 until August 2001, and as Vice President and Chief Financial Officer from May 1997 to October 2000.

14.     Defendant Vernon A. Norviel ("Norviel") served as the Company's Senior Vice President, General Counsel and Corporate Secretary from December 1997 to in or about July 2001. Norviel also served as Vice President and General Counsel from February 1996 to December 1997.

15.     Defendant Kenneth J. Nussbacher ("Nussbacher") has served as a Company Fellow since August 2000.  Nussbacher also served as an Executive Vice President of the Company from September 1995 to 2000, as Chief Financial Officer from September 1995 to May 1997, and as a director from February 1995 to fiscal 1996.

16.     Defendant Richard P. Rava ("Rava") has served as the Company's Head of Product Development since April 2006.  Rava also served as a Company Fellow from June 2001 to April 2006, as Senior Vice President and Chief Technology Officer from January 1999 to June 2001, as Senior Vice President, Operations and Technology from September 1996 to January 1999, and as Vice President, Research and Engineering from 1994 to September 1996.

17.     Collectively, defendants Fodor, Siegel, Caulfield, Schiffman, Verdoorn, Hurwitz, Norviel, Nussbacher, and Rava are referred to herein as the "Officer Defendants."

18.     Defendant John A. Young ("Young") has served as a director of Affymetrix since 1993.  Young has also served as a member of the Audit Committee of the Board ("Audit Committee") and as a member of the Compensation Committee of the Board ("Compensation Committee") since fiscal 1996.

19.     Defendant David B. Singer ("Singer") has served as a director of Affymetrix since 1993.  Singer has also served as a member of the Audit Committee since fiscal 1996.

20.     Defendant Vernon R. Loucks, Jr. ("Loucks") has served as a director of Affymetrix since 1993.  Loucks has also served as a member of the Audit Committee since fiscal 2000.

21.     Defendant John D. Diekman ("Diekman") has served as a director of Affymetrix since 1993.  Diekman also served as Vice Chairman of the Board from July 1999 to December 1999, as Chairman of the Board from 1993 to August 1999, and as the Company's Chief Executive Officer from July 1995 to March 1997.  Diekman has also served as a member of the Audit Committee since fiscal 2000.

22.     Collectively, defendants Young, Singer, Loucks, and Diekman are referred to herein as the "Audit Committee Defendants."

23.     Defendant Paul Berg ("Berg") has served as a director of Affymetrix since 1993. Berg has also served as a member of the Compensation Committee since fiscal 1996.

24.     Collectively, defendants Young and Berg are referred to herein as the "Compensation Committee Defendants."

25.     Collectively, the Officer Defendants, Compensation Committee Defendants, and Audit Committee Defendants are referred to herein as the "Individual Defendants."

## DUTIES OF THE INDIVIDUAL DEFENDANTS

26.     By reason of their positions as officers and/or directors of the Company and because of their ability to control the business and corporate affairs of the Company, the Individual Defendants owed the Company and its shareholders the fiduciary obligations of good faith, trust, loyalty, and due care, and were and are required to use their utmost ability to control and manage the Company in a fair, just, honest, and equitable manner.  The Individual Defendants were and are required to act in furtherance of the best interests of the Company and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.  Each director and officer of the Company owes to the Company and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

27.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of the Company, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

28.     To discharge their duties, the officers and directors of the Company were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company.  By virtue of such duties, the officers and directors of the Company were required to, among other things:

 (a)     exercise good faith in ensuring that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business;

 (b)     exercise good faith in ensuring that the Company was operated in a diligent, honest and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, including acting only within the scope of its legal authority;

 (c)     exercise good faith in supervising the preparation, filing and/or dissemination of financial statements, press releases, audits, reports or other information required by law, and in examining and evaluating any reports or examinations, audits, or other financial information concerning the financial condition of the Company; and

 (d)     exercise good faith in ensuring  that the Company's financial statements were prepared in accordance with Generally Accepted Accounting Principles ("GAAP"); and

 (e)     refrain from unduly benefiting themselves and other Company insiders at the expense of the Company.

29.     The Individual Defendants were responsible for maintaining and establishing adequate internal accounting controls for the Company and to ensure that the Company's financial statements were based on accurate financial information.  According to GAAP, to accomplish the objectives of accurately recording, processing, summarizing, and reporting financial data, a

corporation must establish an internal accounting control structure.  Among other things, the Individual Defendants were required to:

    (1)    make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer; and

    (2)    devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that –

        (a)    transactions are executed in accordance with management's general or specific authorization;

        (b)    transactions are recorded as necessary to permit preparation of financial statements in conformity with [GAAP].

30.    Affymetrix's Audit Committee Charter provides that the Audit Committee shall be responsible for, among other things,

        (a)    Reviewing with management and the independent registered public accounting firm the audited financial statements to be included in the Company's Annual Report on Form 10-K (or the annual report to stockholders if distributed prior to the filing of Form 10-K), including their judgments about the quality, not just acceptability, of accounting principles, the reasonableness of significant judgments, and the clarity of disclosures in the financial statements. The committee shall recommend to the Board whether, based on the discussions and reviews outlined above, the financial statements should be included in the annual report and the Form 10-K;

        (b)    Discussing the results of the annual audit and any other matters required to be communicated to the committee by the independent registered public accounting firm under generally accepted standards including SAS 61. The committee shall have the opportunity to meet as often as may be deemed necessary or appropriate in its judgment with the independent registered public accounting firm in a private session without management present to discuss the results of their annual audit;

(c)     Reviewing with management and the independent registered public
accounting firm the interim financial statements in the Company's Quarterly
Reports on Form 10-Q prior to their filing with the SEC. Also, the
committee shall discuss the results of the quarterly review and any other
matters required to be communicated to the committee by the independent
registered public accounting firm under generally accepted auditing
standards. The chair of the committee may represent the entire committee for
the purpose of this review; and

(d)     Reviewing and discussing with management and the auditors a report from
the auditors of (a) all critical accounting policies and practices to be used by
the Company; (b) all alternative accounting treatments of financial
information permitted within GAAP for policies and practices related to
material items that have been discussed with management, including the
ramifications of using such alternative treatments and disclosures and the
treatment preferred by the independent registered public accounting firm; (c)
any accompanying management letters, schedules of unreported differences
or other material written communications between the independent
registered public accounting firm and management; (d) any significant
changes in the accounting polices and practices of the Company; and (e) any
accounting and financial reporting proposals that may have a significant
impact on the Company's financial reports.

## FACTUAL ALLEGATIONS

### Stock Option Grants to the Officer Defendants

31.     At all times relevant hereto the Compensation Committee determined the salaries,
incentive compensation, and stock option awards for executive officers of Affymetrix and
administered the Company's stock option plans.

32.     From 1998 to 2002, the Compensation Committee granted certain Affymetrix stock
options to the Officer Defendants, as follows:

| Officer | Purported Date of Grant | Exercise Price | Number of Options |
|---|---|---|---|
| Fodor | 6/30/99 | $48.8750 | 150,000 |
|  | 10/2/00 | $47.8516 | 300,000 |
| Siegel | 10/15/98 | $21.2813 | 100,000 |
|  | 6/30/99 | $48.8750 | 50,000 |
|  | 10/2/00 | $47.8516 | 200,000 |
|  | 6/12/02 | $20.855 | 200,000 |
| Caulfield | 7/23/01 | $19.335 | 350,000 |
| Schiffman | 10/30/01 | $29.7550 | 50,000 |
| Verdoorn | 1/10/99 | $28.0625 | 200,000 |
|  | 10/2/00 | $47.8516 | 100,000 |
| Hurwitz | 10/2/00 | $47.8516 | 60,000 |
| Norviel | 10/2/00 | $47.8516 | 60,000 |
| Nussbacher | 6/30/99 | $48.8750 | 100,000 |
| Rava | 6/30/99 | $48.8750 | 100,000 |

33. Pursuant to the terms of the Company's shareholder-approved stock option plans, the exercise price of the options must be no less than the closing price of Affymetrix stock on the date of grant.

34. Pursuant to APB 25, the applicable GAAP provision at the time of the foregoing stock option grants, if the market price on the date of grant exceeds the exercise price of the options, the company must recognize the difference as an expense.

35. Pursuant to Section 162(m) of the Internal Revenue Code, 26 U.S.C. § 162(m) ("Section 162(m)"), compensation in excess of $1 million per year, including gains on stock options, paid to a corporation's five most highly-compensated officers is tax deductible only if: (i) the compensation is payable solely on account of the attainment of one or more performance goals; (ii) the performance goals are determined by a compensation committee comprised solely of two or more outside directors, (iii) the material terms under which the compensation is to be paid,

1    including the performance goals, are disclosed to shareholders and approved by a majority of the

2    vote in a separate shareholder vote before the payment of the compensation, and (iv) before any

3    payment of such compensation, the compensation committee certifies that the performance goals

4    and any other material terms were in fact satisfied.

5        36.    In a striking pattern that could not have been the result of chance, each and every

6    one of the foregoing stock option grants was dated just after a sharp drop and just before a

7    substantial rise in Affymetrix's stock price, as demonstrated in the following chart:

8    **Summary of Option Grants and Surrounding Stock Price Performance**

| Purported Date of Grant | Exercise Price | Stock Price 10 Trading Days Before Grant | Stock Price 10 Trading Days After Grant | % Rise in Stock Price After Grant |
|---|---|---|---|---|
| 10/15/98 | $21.2813 | $24.8125 | $25.50 | 19.8% |
| 1/10/99 | $28.0625 | $24.375 | $36.50 | 30.1% |
| 6/30/99 | $48.8750 | $45.25 | $80.00 | 63.7% |
| 10/2/00 | $47.8516 | $60.625 | $59.875 | 25.1% |
| 7/23/01 | $19.335 | $21.89 | $23.66 | 22.4% |
| 10/30/01 | $29.7550 | $20.20 | $32.74 | 10.0% |
| 6/12/02 | $20.855 | $25.13 | $22.50 | 7.9% |

16        37.    The reason for the extraordinary pattern set forth in the preceding paragraph is that

17    the purported grant dates set forth therein were not the actual dates on which the stock option

18    grants were made.  Rather, at the behest of the Officer Defendants, the Committee Defendants

19    improperly backdated the stock option grants to make it appear as though the grants were made on

20    dates when the market price of Affymetrix stock was lower than the market price on the actual

21    grant dates.  This improper backdating, which violated the terms of the Company's shareholder-

22    approved stock option plans, resulted in option grants with lower exercise prices, which improperly

23    increased the value of the options to the Officer Defendants and improperly reduced the amounts

24    the Officer Defendants had to pay the Company upon exercise of the options.

25                          **Dissemination of False Financial Statements**

26        38.    As a result of the improper backdating of stock options, the Company, with the

27    knowledge, approval, and participation of each of the Individual Defendants,

28        (a)    violated the terms of the Company's shareholder-approved stock option plans;

1

(b)    violated GAAP by failing to recognize compensation expenses incurred when the

2

improperly backdated options were granted;

3

(c)    violated Section 162(m) by taking tax deductions based on stock option grants that

4

were not payable solely on account of the attainment of one or more performance

5

goals and violated the terms of the Company's shareholder-approved stock option

6

plans; and

7

(d)    produced and disseminated to Affymetrix shareholders and the market false

8

financial statements that improperly recorded and accounted for the backdated

9

option grants.

10

39.    The Company, with the knowledge, approval, and participation of each of the

11

Individual Defendants, disseminated its false financial statements in, *inter alia*, the following Form

12

10-K filings:

13

(a)    Form 10-K405 for the year ended December 31, 1998, filed with the SEC on March

14

31, 1999 and signed by defendants Fodor, Hurwitz, Diekman, Berg, Loucks, Singer,

15

and Young;

16

(b)    Form 10-K405 for the year ended December 31, 1999, filed with the SEC on March

17

30, 2000 and signed by defendants Fodor, Hurwitz, Diekman, Berg, Loucks, Singer,

18

and Young;

19

(c)    Form 10-K405 for the year ended December 31, 2000, filed with the SEC on March

20

30, 2001 and signed by defendants Fodor, Hurwitz, Diekman, Berg, Loucks, Singer,

21

and Young;

22

(d)    Form 10-K405 for the year ended December 31, 2001, filed with the SEC on March

23

29, 2002 and signed by defendants Fodor, Schiffman, Diekman, Berg, Loucks,

24

Singer, and Young;

25

(e)    Form 10-K for the year ended December 31, 2002, filed with the SEC on March 31,

26

2003 and signed by defendants Fodor, Schiffman, Diekman, Berg, Loucks, Siegel,

27

Singer, and Young.

28

40.     Furthermore, from 2000 to 2003, the Company, with the knowledge, approval, and participation of each of the Individual Defendants, for the purpose and with the effect of concealing the improper option backdating, disseminated to shareholders and filed with the SEC annual proxy statements that falsely reported the dates of stock option grants to the Officer Defendants.

41.     On August 9, 2006, Affymetrix announced that an internal investigation had discovered "irregularities" related to the issuance of certain stock option grants made between 1997 and 1999. Specifically, the Company stated:

> Affymetrix, Inc. announced that as a result of its previously announced internal review into historical stock option granting practices it will restate its financial statements for certain options granted between 1997 and 1999. The review identified certain documentation lapses but did not find any pattern or practice of inappropriately identifying grant dates with hindsight in order to provide "discounted" or "in-the-money" grants.

> The restatement is currently expected to reflect additional non-cash compensation expense from 1997 to 2003, the vesting period of the options. The restatement is also expected to reflect a tax benefit arising from this stock compensation expense. This tax benefit will be recorded in 2005, the year in which the company reduced its valuation allowance for certain deferred tax assets. The result will be to increase the company's previously reported net losses from 1997 to 2002, reduce previously reported net income for 2003, and increase its previously reported net income in 2005.

> Affymetrix expects to file restated financial statements for the affected periods with the Securities and Exchange Commission during the current quarter. The company has filed a Form 12b-25 with the SEC indicating that its Form 10-Q for the quarter ended June 30, 2006 will not be filed on schedule. As a result of the restatement, the financial statements contained in the Company's Form 10-K for the year ended December 31, 2005 and its Form 10-Q for the quarter ended March 31, 2006 should no longer be relied upon.

## THE INDIVIDUAL DEFENDANTS' BREACHES OF FIDUCIARY DUTIES

42.     The Officer Defendants breached their fiduciary duties by:

(a)     colluding with the Compensation Committee Defendants to backdate stock option grants;

(b)     colluding with the Audit Committee Defendants to violate GAAP and Section 162(m);

(c)     colluding with the other Individual Defendants to produce and disseminate to Affymetrix shareholders and the market false financial statements that

improperly recorded and accounted for the backdated option grants and

concealed the improper backdating of stock options; and

(d)    colluding with the other Individual Defendants to file false proxy statements

and false financial statements in order to conceal the improper backdating of

stock options.

43.    The Officer Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment. Rather, it was intended to, and did, unduly benefit the Officer Defendants at the expense of the Company.

44.    The Compensation Committee Defendants breached their fiduciary duties by:

(a)    colluding with the Officer Defendants to backdate stock option grants;

(b)    colluding with the Officer Defendants and Audit Committee Defendants to

violate GAAP and Section 162(m);

(c)    colluding with the other Individual Defendants to produce and disseminate

to Affymetrix shareholders and the market false financial statements that

improperly recorded and accounted for the backdated option grants and

concealed the improper backdating of stock options; and

(d)    colluding with the other Individual Defendants to file false proxy statements

and false financial statements in order to conceal the improper backdating of

stock options.

45.    The Compensation Committee Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment. Rather, it was intended to, and did, unduly benefit the Officer Defendants at the expense of the Company.

46.    The Audit Committee Defendants breached their fiduciary duties by:

(a)    colluding with the Officer Defendants to violate GAAP and Section 162(m);

(b)    colluding with the other Individual Defendants to produce and disseminate

to Affymetrix shareholders and the market false financial statements that

improperly recorded and accounted for the backdated option grants and

concealed the improper backdating of stock options; and

(c)    colluding with the other Individual Defendants to file false proxy statements and false financial statements in order to conceal the improper backdating of stock options.

47.    The Audit Committee Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment. Rather, it was intended to, and did, unduly benefit the Officer Defendants at the expense of the Company.

48.    As a direct and proximate result of the Individual Defendants' foregoing breaches of fiduciary duties, the Company has sustained millions of dollars in damages, including, but not limited to, the additional compensation expenses and tax liabilities the Company was required to incur and loss of funds paid to the Company upon exercise of options.

## DERIVATIVE AND DEMAND EXCUSED ALLEGATIONS

49.    Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress defendants' breaches of fiduciary duties and unjust enrichment.

50.    Plaintiff is an owner of Affymetrix common stock and was an owner of Affymetrix common stock at all times relevant hereto.

51.    Plaintiff will adequately and fairly represent the interests of the Company and its shareholders in enforcing and prosecuting its rights.

52.    As a result of the facts set forth herein, Plaintiff has not made any demand on the Affymetrix Board of Directors to institute this action against the Individual Defendants. Such demand would be a futile and useless act because the Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

53.    The Board currently consists of nine directors: defendants Fodor, Diekman, Berg, Loucks, Siegel, Singer, and Young, and directors Susan Desmond-Hellmann and Robert H. Trice. The following directors are incapable of independently and disinterestedly considering a demand to commence and vigorously prosecute this action:

(a)    Fodor and Siegel, because they are directly interested in the improperly backdated stock option grants complained of herein;

(b)     Berg and Young, because as members of the Compensation Committee they directly participated in and approved the improper backdating of stock options, as alleged herein.  Moreover, by colluding with the Officer Defendants and others, as alleged herein, Berg and Young have demonstrated that they are unable or unwilling to act independently of the Officer Defendants;

(c)     Young, Singer, Loucks, and Diekman, because as members of the Audit Committee they directly participated in and approved the Company's violations of GAAP and Section 162(m), as alleged herein.  Moreover, by colluding with the Officer Defendants and others, as alleged herein, Young, Singer, Loucks, and Diekman have demonstrated that they are unable or unwilling to act independently of the Officer Defendants; and

(d)     Fodor, Diekman, Berg, Loucks, Siegel, Singer, and Young, because as directors of the Company they directly participated in and approved the Company's filing of false financial statements and other SEC filings, as alleged herein.  Moreover, by colluding with the Officer Defendants and others, as alleged herein, Fodor, Diekman, Berg, Loucks, Siegel, Singer, and Young have demonstrated that they are unable or unwilling to act independently of the Officer Defendants.

54.     Furthermore, demand is excused because the misconduct complained of herein was not, and could not have been, an exercise of good faith business judgment.

## COUNT I

### AGAINST THE INDIVIDUAL DEFENDANTS
### FOR BREACH OF FIDUCIARY DUTY

55.     Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set forth fully herein.

56.     As alleged in detail herein, each of the Individual Defendants had a fiduciary duty to refrain from unduly benefiting themselves and other Company insiders at the expense of the Company.

57.     As alleged in detail herein, the Officer Defendants breached their fiduciary duties by:

   (a)   colluding with the Compensation Committee Defendants to backdate stock option grants;

   (b)   colluding with the Audit Committee Defendants to violate GAAP and Section 162(m);

   (c)   colluding with the other Individual Defendants to produce and disseminate to Affymetrix shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options; and

   (d)   colluding with the other Individual Defendants to file false proxy statements and false financial statements in order to conceal the improper backdating of stock options.

58.     The Officer Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment.  Rather, it was intended to, and did, unduly benefit the Officer Defendants at the expense of the Company.

59.     As alleged in detail herein, the Compensation Committee Defendants breached their fiduciary duties by:

   (a)   colluding with the Officer Defendants to backdate stock option grants;

   (b)   colluding with the Officer Defendants and Audit Committee Defendants to violate GAAP and Section 162(m);

   (c)   colluding with the other Individual Defendants to produce and disseminate to Affymetrix shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options; and

   (d)   colluding with the other Individual Defendants to file false proxy statements and false financial statements in order to conceal the improper backdating of stock options.

60.     The Compensation Committee Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment. Rather, it was intended to, and did, unduly benefit the Officer Defendants at the expense of the Company.

61.     As alleged in detail herein, the Audit Committee Defendants breached their fiduciary duties by:

(a)     colluding with the Officer Defendants to violate GAAP and Section 162(m);

(b)     colluding with the other Individual Defendants to produce and disseminate to Affymetrix shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options; and

(c)     colluding with the other Individual Defendants to file false proxy statements and false financial statements in order to conceal the improper backdating of stock options.

62.     The Audit Committee Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment. Rather, it was intended to, and did, unduly benefit the Officer Defendants at the expense of the Company.

63.     As a direct and proximate result of the Individual Defendants' foregoing breaches of fiduciary duties, the Company has sustained millions of dollars in damages, including, but not limited to, the additional compensation expenses and tax liabilities the Company was required to incur and loss of funds paid to the Company upon exercise of options.

## COUNT II

### AGAINST THE INDIVIDUAL DEFENDANTS
### FOR VIOLATION OF SECTION 10(b) OF THE SECURITIES
### EXCHANGE ACT AND RULE 10b-5 PROMULGATED THEREUNDER

64.     Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set forth fully herein.

65.     Each of the Individual Defendants intentionally or recklessly employed devices, schemes, and artifices to defraud and engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the Company.

66.     The Company relied upon the Individual Defendants' fraud in granting the Officer Defendants options to purchase shares of Affymetrix common stock.

67.     As a direct and proximate result of the Individual Defendants' fraud the Company has sustained millions of dollars in damages, including, but not limited to, the additional compensation expenses and tax liabilities the Company was required to incur and loss of funds paid to the Company upon exercise of options.

### COUNT III

### AGAINST THE OFFICER DEFENDANTS
### FOR COMMON LAW RESTITUTION/UNJUST ENRICHMENT

68.     Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set forth fully herein.

69.     The Officer Defendants were unjustly enriched by their receipt and retention of backdated stock option grants, as alleged herein, and it would be unconscionable to allow them to retain the benefits thereof.

70.     To remedy the Officer Defendants' unjust enrichment, the Court should order them to disgorge to the Company all of the backdated stock options they received, including the proceeds of any such options that have been exercised, sold, pledged, or otherwise monetized.

WHEREFORE, Plaintiff demands judgment as follows:

A.     Against all of the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties and statutory violations;

B.     Ordering the Officer Defendants to disgorge to the Company all of the backdated stock options they received, including the proceeds of any such options that have been exercised, sold, pledged, or otherwise monetized;

C.     Granting appropriate equitable relief to remedy Defendants' breaches of fiduciary duties;

1        D.    Awarding to plaintiff the costs and disbursements of the action, including

2              reasonable attorneys' fees, accountants' and experts' fees, costs, and

3              expenses; and

4        E.    Granting such other and further relief as the Court deems just and proper.

5    **JURY TRIAL DEMANDED**

6    Plaintiff demands a trial by jury.

7    **CERTIFICATION OF INTEREST ENTITIES OR PERSONS**

8    Pursuant to Civil Local Rule 3-16, the undersigned certifies that as of this date, other than

9    the named parties there is no such interest to report.

10   Respectfully submitted,

11   Dated:  August 30, 2006        BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP

12

13

14   Kathryn A. Schofield

15   Alan R. Plutzik

16   L. Timothy Fisher
     Kathryn A. Schofield

17   2125 Oak Grove Road, Suite 120
     Walnut Creek, California  94598

18   Telephone:  (925) 945-0200
     Facsimile:  (925) 945-8792

19   SCHIFFRIN & BARROWAY LLP

20   Eric L. Zagar
     Sandra G. Smith

21   280 King of Prussia Road
     Radnor, PA  19087

22   Telephone:  (610) 667-7706
     Facsimile:  (610) 667-7056

23   Attorneys for Plaintiff

24

25

26

27

28

## **VERIFICATION**

I, **Dr. Irwin Berkowitz**, hereby verify that I have reviewed the Complaint and authorized its filing and that the foregoing is true and correct to the best of my knowledge, information and belief.

I verify under penalty of perjury that the foregoing is true and correct.

DATE: _8/27/06_

DR. IRWIN BERKOWITZ